UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NORTH TEXAS PATENT GROUP, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:10-CV-1312-G |
| MANHATTAN GROUP LLC d/b/a MANHATTAN TOY, ET AL., | ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the motions of the defendants Manhattan Group, LLC

("Manhattan Group") (docket entry 13) and Automoblox LLC ("Automoblox")

(docket entry 16) to dismiss the complaint filed by the *qui tam* relator, North Texas

Patent Group, Inc. ("NTPG" or "the relator"), and the alternative motion of

Automoblox to transfer venue (docket entry 16).  For the reasons set forth below, the

defendants' motions to dismiss are granted, and Automoblox's motion to transfer

venue is denied as moot.

# I.  BACKGROUND

*Qui tam* relator NTPG brings this action on behalf of itself and the United

States against Manhattan Group and Automoblox (collectively, the "defendants") for

false patent marking and false advertising in violation of 35 U.S.C. § 292.  *See*

Complaint for False Marking ("Complaint") ¶¶ 36, 41.  The defendants have moved

to dismiss, arguing that the relator's complaint fails to satisfy the heightened pleading

standard of Rule 9(b).  Defendant Manhattan Toy's Motion and Memorandum in

Support of its Motion to Dismiss the Complaint ("Manhattan Group Brief") at 11;

Defendant Automoblox LLC's Motion to Dismiss or Transfer Venue and Brief in

Support ("Automoblox Brief") at 8.  NTPG counters that Rule 9(b)'s heightened

pleading requirement does not apply in suits for false marking, and, even if it did, the

complaint's allegations satisfy that requirement.  North Texas Patent Group, Inc.'s

Brief in Support of Its Response to Defendant Manhattan Toy's Motion to Dismiss

and Defendant Automoblox LLC's Motion to Dismiss ("Response") at 3-4, 7-13.

Manhattan Group is a Wyoming corporation with its principal place of

business in Minneapolis, Minnesota, Complaint ¶ 11, and Automoblox is a New

Jersey limited liability corporation with its principal place of business in Wharton,

New Jersey.  *Id.* ¶ 1.  On July 22, 2003, the United States Patent and Trademark

Office ("USPTO") issued United States Patent No. 6,595,824 (the "824 patent") --

titled Educational Snap-Together Toy Vehicle System -- to Automoblox, which had

filed the patent on July 30, 2002.  *Id.* ¶ 16.  According to the complaint, the

"Defendants marked (or caused to be marked) products within Defendants' line of

Automoblox products with the '824 patent, despite the fact that some Automoblox

products" are not covered by the patent.  *Id.* ¶ 19.  NTPG identifies nearly twenty

products that it alleges to have been falsely marked with the '824 patent.  See *id.*

¶ 20.

     In its complaint, NTPG alleges that the defendants "knew that the '824 patent

does not cover *every* Automoblox product" that the defendants "marked and

advertised as being covered by the '824 patent," *id.* ¶ 29 (emphasis original), and

because the patent "unmistakably does not cover every Automoblox product marked

and advertised as covered by the patent, Defendants cannot have any reasonable

belief that each and every one of its Automoblox products are patented or covered by

the '824 patent."  *Id.* ¶ 33.

     NTPG also alleges that the defendants' intent to deceive the public regarding

the scope and applicability of 824 patent can be inferred from two sets of facts.  First,

"that some of Defendants' Automoblox products practice the '824 patent while

others do not evidences Defendants' intent to deceive the public . . . ."  *Id.* ¶ 30.

Second, Patrick Calello, a co-inventor of the '824 patent, "is the man behind the

Automoblox brand creation, corporate identity, graphic design, industrial design, and

mechanical engineering," "was involved in bringing the Automoblox line of products

to market, and "has a close relationship with the Defendants' commercialization of the Automoblox products." *Id.* ¶¶ 31-32.  Mr. Calello's relationship to Automobolox, according to NTPG, "evidence[s] [the] Defendants' intent to deceive the public into believing that the scope of the '824 patent is so broad as to encompass Auomoblox products that do not employ the three-element connector system [covered by the '824 patent]." *Id.* ¶¶ 31-32.

## II. ANALYSIS

Title 35, Section 292(a) of the United States Code prohibits the false marking of a product with a patent "for the purpose of deceiving the public."  35 U.S.C. § 292(a).  The statute requires a plaintiff asserting a false marking claim to demonstrate:  (1) the marking of an unpatented article; (2) with an intent to deceive the public.  See *Forest Group, Inc. v. Bon Tool Company*, 590 F.3d 1295, 1300 (Fed. Cir. 2009).  "Intent to deceive is a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true." *Clontech Laboratories, Inc. v. Invitrogen Corporation*, 406 F.3d 1347, 1352 (Fed. Cir. 2005) (citing *Seven Cases v. United States*, 239 U.S. 510, 517-18 (1916)).  "[I]n order to establish knowledge of falsity the plaintiff must show by a preponderance of the evidence that the party accused of false marking did not have a reasonable belief that the articles were

- 4 -

properly marked (*i.e.*, covered by a patent).  Absent such proof of lack of reasonable belief, no liability under the statute ensues." *Id.* at 1352-53.

The Federal Circuit recently pronounced that Rule 9(b)'s particularity requirement applies to false marking claims.[1]  *In re BP Lubricants USA Inc.*, Misc. No. 960, 2011 WL 873147, at *1 (Fed. Cir. Mar. 15, 2011).  The heightened pleading requirement of Rule 9(b) prevents a relator from using discovery as a fishing expedition by "act[ing] as a safety valve to assure that only viable claims alleging fraud or mistake are allowed to proceed to discovery." *Id.* at *2.  "Permitting a false marking complaint to proceed without meeting the particularity requirement of Rule 9(b) would sanction discovery and adjudication for claims that do little more than speculate that the defendant engaged in more than negligent action." *Id.*

Rule 9(b) states that "[i]n alleging fraud . . ., a party must state with particularity the circumstances constituting fraud. . . ." FED. R. CIV. P. 9(b).  The Fifth Circuit interprets Rule 9(b) strictly, requiring the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[2]

---

[1]     The Federal Circuit possesses exclusive jurisdiction over an appeal of a final decision of a federal district court in patent law cases.  28 U.S.C. § 1295(a), *amended by* Pub. L. No. 111-350, 124 Stat. 367 (2011); *Chemical Engineering Corporation v. Marlo, Inc.*, 754 F.2d 331, 333 (Fed. Cir. 1984).

[2]     The heightened pleading standard of Rule 9(b) "provides defendants
(continued...)

*Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177-78 (5th Cir.), *cert. denied*, 522 U.S. 966 (1997); see also *Benchmark Electronics, Inc. v. J.M. Huber Corporation*, 343 F.3d 719, 724 (5th Cir. 2003) (holding that Rule 9(b) requires the plaintiff to specify "the who, what, when, where, and how" of the alleged fraud).  The court finds the realtor's complaint substantially lacking in this regard; NTPG's has failed to allege particularized facts that would support a reasonable inference of the defendants' mismarked their products "for the purpose of deceiving the public."

In its response to the defendants' motions to dismiss, NTPG directs the court to allegations in its complaint that it believes are sufficient to satisfy this standard. First, NTPG argues that its complaint alleges that "Patrick Calello, the co-inventor of the patent-at-issue, is the man behind Automoblox 'brand creation' and 'corporate identity,'" Response at 9 (*citing* Complaint ¶ 31 & Exhibit F), and it is reasonable to infer that Mr. Calello is aware of the patent's claims.  *Id.*  According to NTPG, "because Mr. Calello was the designer of the products-at-issue and 'was involved in bringing the Automoblox line of products to market' there is a reasonable inference that he knew that his patent did not cover the falsely marked products . . . ."  *Id.* at 9-10 (*citing* Complaint ¶ 31 & Exhibit F).

---

[2](...continued)
with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims in an attempt to discover unknown wrongs." *Tuchman v. DSC Communications Corporation*, 14 F.3d 1061, 1067 (5th Cir. 1994).

Additionally, NTPG contends that its complaint includes allegations of "over twenty products that Manhattan falsely marked with the patent-at-issue," which -- according to NTPG -- "establish that Manhattan [Group] was aware of the patent." *Id.* at 10. Since Manhattan Group "held itself out to the public as having knowledge of the scope of the patent's claims" by marking the patent number on its product packaging, NTPG argues that "[i]t is beyond comprehension to believe that Manhattan marked a patent number on the product packaging of the toy cars that it 'manufactures and distributes' without being aware of both the patent and the scope of its claims. *Id.* The court is not so convinced.[3]

Even if NTPG's allegations reasonably supported an inference of the defendants' knowledge of the "patent and the scope of its claims," it does not follow that the defendants falsely marked the products at issue with the requisite "intent to deceive the public." See *BP Lubricants*, 2011 WL 873147, at *4 (holding that pleading falsity and knowledge "does not, standing alone, satisfy Rule 9(b)'s particularity requirement."). Certainly, the defendants might have been

---

[3]     To the extent that NTPG insists its allegations that the defendants are "sophisticated compan[ies]," *e.g.*, Complaint ¶ 10, who have or regularly retain "sophisticated legal counsel," *id.* ¶ 11, satisfy the heightened pleading requirement of Rule 9(b), that argument has been squarely foreclosed by the Federal Circuit. *BP Lubricants*, 2011 WL 873147, at *4 (dismissing allegations that the defendant is a "sophisticated company and has experience applying for, obtaining, and litigating patents"). "Conclusory allegations such as this are not entitled to an assumption of truth at any stage in litigation." *Id.* (citing *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1952 (2009)).

knowledgeable of the scope of the patent-at-issue but merely negligent in its

misapplication.  Cf. *id.* at *2 (explaining that Rule 9(b) prevents discovery and

adjudication for claims that arise out of the defendants' negligence).  A claim does not

lie under the statute for negligently -- or even knowingly -- mismarking a product, if

such was not done for the "purpose of deceiving the public."  See *Pequignot v. Solo Cup

Company*, 608 F.3d 1356, 1365 (Fed. Cir. 2010) ("[L]eaving the expired patent

numbers on its products after the patents had expired, even knowingly, does not show

a 'purpose of deceiving the public.'"); see also *Patent Compliance Group, Inc., v. Wright

Medical Technology, Inc.*, No. 3:10-CV-0289-K, 2010 WL 5184344, at *3 (N.D. Tex.

Dec. 16, 2010) (dismissing false marking action where the defendant's conduct might

have been "inadvertent").  NTPG's failure to allege particularized facts supporting an

inference of the defendants' intent to deceive the public is a fatal defect.[4]  As a result,

its complaint is dismissed.

---

[4]     The court notes that NTPG's complaint rarely distinguishes between the
two defendants in this case; instead, it consistently alleges conduct not specifically
attributed to either defendant as conduct of the "defendants."  *See generally*
Complaint.  Nevertheless, because the relator has failed to allege with particularity
facts supporting an inference of either or both of the defendants' intent to deceive the
public, the court finds it unnecessary to address whether the relator's complaint
sufficiently "enlighten[s] each defendant as to his or her particular part in the alleged
fraud."  See *Southland Securities Corporation v. INspire Insurance Solutions, Inc.*, 365 F.3d
353, 365 (5th Cir. 2004).

### III.  CONCLUSION

For the above stated reasons, the Manhattan Group's and Automoblox's motions to dismiss are **GRANTED**, and Automoblox's motion, in the alternative, to transfer venue is **DENIED** as moot.

**SO ORDERED**.

April 15, 2011.

_____

**A. JOE FISH**
**Senior United States District Judge**